We'll hear argument next in No. 19-2410, L'Oreal USA, Inc. v. Liqwd, Inc., Ms. O'Brien. Good morning, Your Honors, and may it please the Court, Michelle O'Brien on behalf of L'Oreal USA, Inc. The PTAB here erred in two ways in its implicit construction of Claims 14-16, 18, and 24-28. First, the PTAB should have found that the wearing clauses in these claims are not entitled to patent belay. And second, the Board should have found that the claim reductions and breakage were necessarily present in practicing the full scope of the claim. Instead, by finding that some hypothetical amounts of belay gasses in the range recited in Claim 1 may not achieve the claim reduction, the Board's construction amounts to a finding that those portions of the claims are inoperative. This cannot have been a proper construction, as this Court made clear in Alcon v. Apatow. Regarding the first error, Claim 1 recites simply, a method of bleaching hair using a conventional bleaching formulation with malic acid. Claims 14-16, 18, and 24-28 recite the intended results of practicing that method as Liqwd admitted in its Patent Owner Preliminary Response. This is Judge Toronto. Where in your petition did you make this argument that these breakage limitations should not be given any patentable weight? So, while we didn't use the language per se, we did point at Appendix 318, for example, that the 954 patent doesn't give any information regarding how the recited reductions are allegedly achieved. As such, we made the argument, while not using the known manipulative steps or manipulative difference language, we did, in essence, argue that the patent does not describe any manipulative difference in order to achieve the claimed results. But there's no discussion there of the line of authority with Bristol Myers and the other cases that would need to be considered to decide whether this falls within that category, is there? Not in the petition, Your Honor. We did elaborate on this position at the hearing, and we cited to the Cow and Copaxone cases, as well as King Pharmaceuticals at that time. And did the Board, in its decision, address this issue? They did, Your Honor. Where is that? They addressed- That is what we- I find that I apologize, I have it here. It is at Appendix 83 to 84 in a footnote, footnote 46. The problem with the Board's analysis of the no patentable weight position that we discussed at the trial, is that they conflated it to some extent with the finding of no inherency as well. And while these two issues certainly are connected and do have some overlap, they're not necessarily the same. And I believe that was erroneous for the Board to conflate the issues without addressing the patentable weight of the wearing clause. There are instances where a wearing clause may be given weight, but this is not one of them. First, the language here was not material to patentability, and Liquid has not argued that it was, and cannot argue, since neither the applicant nor the examiner even mentioned it during prosecution. Allergan sales, which is relied on by Liquid, is distinguishable for this reason, as the court's basis for finding that the wearing clauses there were entitled to patentable weight was because the record showed that both the applicant and the examiner believed those clauses were material to patentability, and they were, in fact, the basis for allowance of the claim. Liquid did not respond to our argument that the wearing clauses in the breakage claims are not material to patentability, and has not argued anywhere in the record that they are. Second, the wearing clauses here do not result in or require any manipulative difference in the steps of the claim. The steps of bleaching the hair are the same, regardless of whether any reduction is made. Let me just ask you this. I guess, why wouldn't the straightforward reading of these breakage claims be, you read down elements of the claim, and one of them says, here's a range of 0.1% to 50% of the maliac acid, and wherein you get a certain result, and what that tells you is you had better choose within that range of maliac acid, and any of the other conditions previously mentioned, the ones that produce that result. It is actually narrowing. It's not an assertion that the entirety of the pre-wear-in clause ranges produce that result. It is a narrowing. Now, one might have a non-enablement objection to that, though this PGR doesn't include a non-enablement objection, but why isn't that the straightforward meaning of this claim? This court's jurisprudence, Your Honor, has held for 70 years that simply reciting an intended effect is not patentable and will not be given patentable weight. Right, but I guess another way of saying what I just said is this is not a mere intended effect. It's a demand for an effect, and it therefore limits the choices the other claim elements give you to some subset that produced that effect. Well, and Liquid made the argument, and it's read brief, that other unclaimed variables were required in order to achieve the effect. However, as an initial matter, Liquid waived the argument because it was not raised below, but the board only pointed to the amount of malic acid in the final written decision as being relevant to whether or not the reduction in breakage was achieved. However, there is nothing in the claim's specification or record at all linking the amount of malic acid, the time the mixture is left on the hair, or any other variable to any particular amount of reduced breakage. If different amounts of malic acid or other variables are required to achieve these reductions in breakage, Liquid could have and should have disclosed that relationship in the specification and claim. The fact that they didn't but claimed those reductions in breakage with the entire range of 0.1 to 50% malic acid confirms that the result is inherent across the entire range regardless of any unclaimed variable. Can I just, I realize you just, I guess, sort of invited me to shift to the inherency argument. I was a little confused about what your inherency argument was, and I guess I thought there were two possibilities. The one that I've heard this morning and the one that I thought I was getting from most of what I previously read was that the property, the 5%, 10%, 20% breakage reduction, has to be, and you think the patent asserts to be, inherent in the entirety of the material covered by all the words that come before wherein, so that in particular in the entirety of the malic acid range. Then, at least as the proceedings evolved, I think, in the board when the board granted additional surreply and so on, the focus seemed to have shifted to whether the particular combination of, is it Pratt and Tanabe, is that what it is? Whether the prior art combination, whether their teachings had these breakage reductions inherent, which is a much more limited proposition. Can you illuminate which of those two arguments you made to the board are making now, et cetera? So, the argument is that malic acid, according to the 954 patent, has the inherent property of reducing breakage in the amounts recited. If I'm a COSA and I look at claim 28, which recites 0.1 to 50% achieve at least 50% reduction in breakage, and I look at the specification to figure out how to achieve that reduction in breakage, the only information I have is in column 18 at line 27 to 30, telling me that if the active agent is present, I can achieve the reduction in breakage of 50% or higher. It doesn't tell me different amounts, different times, or any other variable. That tells me, as a COSA, that it's inherent in the presence of malic acid in the claimed range. In addition, we had evidence by virtue of Dr. Wickett's testimony, saying that the malic acid itself is what achieved the reduction in breakage across the full range of the claims. Now, in response to an exhibit that LIQUID submitted, which demonstrated that adding a conditioner to a bleach could reduce damage by greater than 50%, Dr. Wickett further testified that in addition to achieving greater than 50% just based on the presence of the malic acid, the evidence in Exhibit 2028, which teaches that a conditioner also gives you greater than 50% reduction in damage, and Dr. Wickett testified that PrAT, which also teaches the same mechanism as Exhibit 2028, i.e. increasing the comorbidity, that the combination of Tanabe with malic acid, which would necessarily achieve the reduction in breakage, and then the fact that Tanabe is a conditioner and PrAT teaches the conditioner, gives you the increased comorbidity that Exhibit 2028 does. So Dr. Wickett's testimony was that supplementing his previous testimony that the malic acid itself would give you the inherency of the claims range that Exhibit 2028 demonstrated it for that additional reason. All right. Unless there are further questions, we'll hear from Mr. Weisberg first. May it please the Court, Sanford Weisberg for the Appellee LIQUID. I'd like to start, just to get the record straight, on non-enablement. This is not a ground that was listed in the petition as a ground for the challenge. That's at Appendix 18. They listed only obviousness grounds, not lack of enablement. And therefore, that is the real waiver in this case. In terms of inherency and material to patentability, let me address those. I do think that the case law is kind of interchangeable to some extent. I think the most important cases that we've cited for the Court— I believe either an assertion that L'Oreal failed to make this point to the Board, or I'm not even sure whether you directly addressed the point on the merits. But just for current purposes, you did not say that this was forfeited by a failure to preserve this argument to the Board, did you? The lack of enablement point? We did make that? No, not the lack of enablement. No, Your Honor is correct. Your Honor is absolutely correct on that point. I think that the reason why we didn't make that point in the red brief is that it really came to the fore only in L'Oreal's reply brief, to which we didn't have a further opportunity to respond. But I think I can just talk to the case and address the merits, because I think that the analysis of material to patentability really dovetails with the analysis of inherency. And I think that the two most important cases of this Court on those issues are Parr Pharmaceuticals and Allergan. Parr Pharmaceuticals, an inherency case. Allergan, a material to patentability case. A claim construction case, which cites some prior cases and, in fact, distinguishes the Bristol-Myers case that involved inherency. And let me explain why those cases— why the PTAB had substantial evidence to find that L'Oreal, which had the burden of proof, did not meet that burden here. The key point is that when there is a specific numeric result that is claimed, which is what the breakage claims do, again, 14 through 18 and 24 through 28, they claim specific percentage reductions. Claim 18, for example, claims at least 50% breakage reduction. That's all that is in Claim 18. In terms of material to patentability, if you're saying that that is not material to patentability, what you'd be saying is that the entire— Is what you're saying is that if the claim had said wherein breakage is reduced without a percentage, that that would just be an objective rather than a claim limitation? Yes, yes. We would make that distinction, and I think that that's what Judge Prost's concurrence in Allergan said about Bristol-Myers. The distinction is that Allergan involved a claim of a specific numeric result, whereas Bristol-Myers was a much more qualitative result. So, yes, Your Honor, if our claims had only said reduction and breakage without the numeric percentage, we would have a much different case and a much weaker case. In terms of what the—as I explained, there was no non-enablement argument made, but even if one had been made, a person of skill of the art, as the PTAB recognized, and this court reviews that for substantial evidence, the PTAB recognized that what a skilled artisan would naturally know to do would be to look for the right concentration within that 0.1 to 50 percent range to achieve things like the at least 50 percent breakage reduction. That's the natural way that one would go about doing this. And the combination of the Pratt and Tanabe references, those—that overlap. So, again, our claims are 0.1 to 50 percent. That's claim one of the 954 patent. The Pratt-Tanabe combination overlaps only a small percent of that range, which is 0.1 to 0.429. So, a much bigger part of the range is not covered by that combination. And, moreover, there's no discussion in Pratt or Tanabe about a breakage reduction in numeric terms. And Wickett Declaration, which was discussed by my friend on the other side, similarly discussed an industry standard conditioner. It didn't discuss malic acid. It didn't discuss use of malic acid in the context of a bleaching treatment. And this court doesn't sit to address the merits of the Wickett Declaration as a matter of first instance. The PTAB looked at all of this. It looked at the arguments against the Wickett Declaration and why it didn't support L'Oreal's inferences. And it decided, no, this is not enough to establish inherency. And this court, again, reviewing under the substantial evidence standard and recognizing that L'Oreal had the burden, properly rejected the inherency argument. And the other thing I would point out, we didn't quite get to this in my adversary's opening argument, but the specification kind of clears up this issue because it says that only in some embodiments, and this is at Appendix 241, in some embodiments, hair breakage increases by 5, 10, etc. percent. That is an instruction that you have to narrow the range that's claimed in Claim 1 in order to achieve that. Again, prior art doesn't establish breakage reduction in numeric terms. Inherency doesn't either. Par Pharmaceuticals is on point in that respect. So is Allergan. In Par, you had a claim of zero substantial difference in absorption of a medication into the bloodstream or other specific numeric reductions. And this court said, rejecting an inherency argument, that while it may be true that a reduction in particle size naturally results in some improvement in the food effect, the district court failed to conclude that the reduction in particle size naturally results in no substantial difference in the food effect. So too here, the breakage claims recite numeric results. L'Oreal, which had the burden, did not proffer evidence that any of the claimed numeric results necessarily follows from employing the patented process. If the court has no further questions on the appeal, I'd like to turn briefly to the cross appeal. And on the cross appeal, our lead argument derives from the Max Linear and Nestle cases. And it is basically that the finding that was affirmed by this court from the 419 patent proceeding, that L'Oreal copied Liquid's unpublished patent application, had to be considered by the PTAB in the obvious analysis. So again, the affirmance of a factual finding made by that first PTAB panel. Let me ask you a question. The 419 PTAB proceeding is now on appeal to this court. Let's assume hypothetically that we were to affirm the decision of the PTAB with respect to the 419 claims. Would that resolve the copying issue with respect to the 954 as well? We would respectfully submit that it would not for the reason that the prior art references that are involved in the 419 proceeding are not entirely different, but largely different. So in the 419, the lead references are Ogawa and Kitabata, whereas in the 954, the lead reference is Pratt, and the main secondary reference is Tanabe. There are a few overlapping references, but overall, there's certainly a different set of prior art references. And the PTAB, the minimum in the first instance, just as this court instructed it to do the first time around in the 419 case, would have to weigh this copying finding against the prior art references that are at issue in the 954. So however 419 is decided, and we have filed a notice of appeal, but if we lose that, hypothetically lose that case, it would not control the fact that the PTAB under Chenery and under this court's prior decision would have to weigh the copying finding against the prior art references here. Mr. Weisbrot, this is Judge Taranto. Can I ask you this? So I think our law is pretty clear that there's a host of subsidiary factual questions underlying what is ultimately a consider-all-the-facts legal determination of obviousness and motivation to combine what the prior art teaches, commercial success, and copying. The court in the first 419 appeal remanded the matter, suggesting that there were facts left to be decided, and the weighing of a fact about copying against all of the other underlying facts is not a factual question, it's a legal question. So I think it's at least implicit, almost explicit, that other facts are relevant under this umbrella of copying, and one can call those other facts nexus, because our case law has made clear that the particular set of circumstances surrounding a particular kind of copying have a lot to say about what bearing ultimately the particular kind of copying has on the ultimate obviousness determination, like did you try and fail before. So why isn't it, sorry for the long background wind-up, but why isn't it a fair thing for us to do here to say All the 419 panel of this court did was to say L'Oreal developed a product with malic acid only as a result of seeing what it saw in the May 2015 meeting, but there are other facts having to do with the technological recognition of this combination from the April notebooks that tell us that whatever weight in a legal analysis the limited fact finding has about development of a product is just minimal compared to the rest of the obviousness analysis, so that it doesn't actually have to be contrary to anything done in the prior panel. Let me try to address that by saying that I do believe if you compare the 419 original PTAB decision and this court's decision on the one hand to the 954 decision, there is a finding of copying in the former, and there is a finding of no copying in the latter. Let me put it this way, copying is not a simple unitary concept. What there was was a finding that L'Oreal would not have developed a malic acid product were it not for seeing what it saw at the May 2015 meeting, and then we remanded because that didn't end the legally relevant factual inquiries which were then made on remand there but also in this case, but what that leaves for us is a legal determination. I understand that, Your Honor, but I still think that that legal determination has to be made in the first instance by the PTAB, because even if there may be a nexus question, nexus is not an on-off switch, and we have furthermore in our briefs explained that the PTAB's nexus discussion is erroneous under this court's liquid power decision, but regardless, if you have a copying fact that has to be weighed against other facts including prior art references, including nexus, that weighing needs to be done under Chenery and Sang-Soo Lee. It has to be done in the first instance by the PTAB, not by this court. That's what I guess maybe we've now gotten to the point that I really want. Why is that the case? It's a legal determination. Because it's obviousness. This court has certainly said time and again that the overall question of obviousness is a legal determination that depends in part on underlying facts, but the weighing portion of that is something that this court is not reviewing a district court here. If it were in this appeal, that would be a different case. When this court is reviewing the PTAB, this court under Chenery and Sang-Soo Lee gets the benefit of the PTAB's analysis in the first instance, and we don't know, as we sit here today, how the PTAB would balance the prior art references in the 954 case with nexus and with copying, and for those reasons, at a minimum, there needs to be a remand. I'd like to just briefly point out, I know my time is short, but on the prior art references, our main argument, which I'm going to simplify to some extent, is that a reasonable, skilled artisan would not have been motivated to combine, on the one hand, high pH processes with, on the other hand, low pH processes, and we've debated this issue ad nauseum with L'Oreal, whether it's in the PTAB or the district court or wherever. Recently, L'Oreal itself, in another proceeding, discussing one of the same references here, Tanabe, which is a low pH or acidic application, says you wouldn't think a skilled artisan would be discouraged from using that in a high pH context. That's the argument that Liquid has been making all along. This new concession in a related proceeding by L'Oreal, we think, breathes new life into that argument. We think the PTAB should consider that on remand, or this court should consider it here. We've cited authorities for that this court could take judicial notice of that PTO document, and we think that that is relevant as well. When one is doing what you described, Judge Toronto, as this overall weighing, one would consider copying Nexus as well as the strength of the prior art references. If the court has no further questions, I'll rest on my briefs. Hearing no further questions, thank you, Mr. Weisberg. Thank you. Ms. O'Brien? Yes, thank you, Your Honors. I have a few points that I just wanted to make in response, reply to in the main appeal. We are not arguing non-enablement. We are arguing that the board's implicit construction is a factual determination that the claims are not enabled. We are arguing that since the only variable in the claim is the amount of malic acid, which is identical in the claims, one and the breakage claims, that the reduction can only be achieved as long as the malic acid is present without tying any specific reduction to any other variable. And a POTA would understand that it's therefore inherently the natural result of the malic acid in the bleaching mixture. However, if Liquid agrees that the board's construction is right, we would suggest that this is a tacit admission that the claims are not enabled. The other point that I wanted to respond to was with regard to Parr Pharmaceuticals. That case is distinguishable and should not control here because in Parr Pharmaceuticals, the patent itself taught that the claims property was variable depending on the claimed components as well as unclaimed components, such as dosage and particle size. And the third point that I wanted to make has to do with where we started. Alcon says that a claim construction that excludes part of the claim that is not enabled is not proper. The last point that I want to make with regard to the main appeal is that Dr. Wickett did not testify about some unknown conditioner. He testified specifically that the Pratt-Tonati conditioner composition would have the beneficial results of the malic acid reduction in damage plus the conditioner reduction in damage. And then finally, turning to the cross appeal with regard to Estoppel, I agree with Judge Toronto's position that the important issue here is not whether the remand was necessary as a result of this court's affirmance, but rather whether the finding of copying was necessary to the final judgment. In particular, if I can just finish my thought, Your Honors, as the Supreme Court said in Bobby V. Bees, which is 556 U.S. 825, we cited it in our brief, I think the other side says the judgment that matters was the judgment of this court remanding the case. And indeed, this copying finding was not only essential to it, it was the entirety of the basis for that. Right, but the Bobby V. Bees case and the restatement of judgments, Section 27 in Common Age makes confirm this as well. The question is whether it's necessary to the underlying legal claim, not the remand decision. And as you noted, the whole point of the remand was to send it back to the BTAB to determine whether it was essential to the judgment. All right. And the last, can I just address this? I think, Ms. O'Brien, I think we're out of time. Unless my colleague has a question. Thank you. Mr. Weisburst, you may be out of time, but we'll give you one minute. Thank you, Judge Dyke. Very briefly, Nestle involved a remand, just as this court's prior decision did. A collateral estoppel does apply under this court's case law. I want to amplify one point I made about the weighing that has to be done by the PTAB in the first instance. It's not just weighing a copying finding and nexus and prior art, which is different from the 419 case, but it's also weighing other objective indicia of non-obviousness that were timely raised and discussed by the PTAB. They weren't flatly rejected. They may affect the balance, and they would have to be weighed as part of this overall legal determination of obviousness under Chenery in the first instance by the PTAB. Finally, although I don't have time to do it now, we have distinguished the Alcon case in our briefs, and I would respectfully refer the court to that in our red brief. We are not trying to rewrite any claims, as was done in Alcon. With that, I'll rest on my briefs. Thank you, Your Honor. Okay. Thank you, Mr. Weisburst. Thank you, Ms. O'Brien. The case is submitted.